LOKERSON and others *vs.* STILLWELL and others.

To constitute a mortgage, the conveyance must be *originally intended* between the parties as a security for money or as an encumbrance merely.

Parol evidence is admissible in equity to show that a deed absolute on its face was intended as a mortgage, and that the defeasance was omitted by fraud, surprise, or mistake.

A deed made to hinder, delay, or defraud creditors is void only as to creditors: it is valid as against the grantor and his heirs.

The terms of the contract must be clearly proved before a party is entitled to a decree for its specific performance.

*Joel Parker* and *Joseph F. Randolph*, for complainants.

*Cannon* and *Beasley*, for defendants.

THE CHANCELLOR. The bill is filed by the heirs of Abraham Stillwell against the heirs of Joseph M. Stillwell, to redeem certain real estate, which was conveyed from Abraham to Joseph by an absolute deed in fee simple, bearing date on the 8th of April, 1824.

The instrument in question is not a mortgage, nor in the nature of a mortgage. Upon its face it is an absolute deed executed by Abraham Stillwell to Joseph M. Stillwell for the consideration of $1600 paid by the grantee to the grantor. It was not originally intended as a security for money. The only debt due from the grantor to the grantee at the time of its execution was already secured by bond and mortgage upon a part of the same premises. Those securities continued to be held by the grantee after the execution of the deed.

To constitute a mortgage, the conveyance must be *originally intended* between the parties as a security for money or as an encumbrance merely. 2 *Story's Eq. Jur.* § 1018; 4 *Kent's Com.* 142.

Parol evidence is admissible in equity to show that it was intended as a mortgage, and that the defeasance was omitted by fraud, surprise, or mistake. 4 *Kent's Com.* 142.

But it is not pretended that the defeasance was omitted by fraud or mistake. According to the case made by the plaintiff's evidence the deed is precisely what it was intended to be, viz. a shield against the claims of creditors.

The complainant's wife and daughter, who alone testify as to the transaction, show conclusively that it was not designed as a security for a loan, but in fact to protect the property of the grantor from his creditors. If this be the true character of the transaction, it is clearly not a mortgage nor in the nature of a mortgage. A deed made to hinder, delay, or defraud creditors is void only as to creditors. It is valid as against the grantor and his heirs. Nor will a court of equity relieve against it at the instance either of the grantor or his heirs. *Den* v. *Monjoy*, 2 *Halst.* 174; *Jackson* v. *Garnsey*, 16 *Johns. R.* 192; *Roberts on Fraud, Con.* 646; *Jackson* v. *Dutton*, 3 *Harrington* 98.

No party to an agreement in fraud of legal rights is entitled to the aid of a court of equity. *Tantum* v. *Miller*, 3 *Stockt.* 551; *McClure* v. *Purcel*, 3 *A. K. Marsh* 61.

The case, as made by the bill, is that subsequent to the

conveyance to Joseph M. Stillwell, a written agreement was made by the grantee to reconvey to the grantor the premises conveyed by the deed upon the repayment of the amount then ascertained to be due from the grantor to the grantee. This is clearly a totally distinct contract from any that was or could have been made at the date of the deed, for it includes, by its terms and according to the complainants' evidence, moneys which were advanced after the date of the deed.

It is this contract of which the complainants, after the lapse of thirty years, ask a specific performance.

The contract which is set out in the bill is essentially variant from that established in evidence. The bill sets out a contract purporting to have been made on the 22d of October, 1827, for the reconveyance of the premises upon the repayment of $630 with interest. The contract, which the complainants claim to have proved, was made on the 12th of August, 1825, by the terms of which the reconveyance was to be made on the repayment of $541.30 with interest. There is no correspondence between the allegation and the proof. They differ in essentials. If the complainants' equity was clear, and this was the only difficulty in the way of a recovery, the bill might be amended upon proper terms even at this stage of the cause.

But the terms of the contract are not proved with sufficient clearness to warrant the interference of the court. No rule is better settled than that which requires that the terms of the contract should be clearly proved before a party is entitled to a decree for its specific performance.

The contract is alleged to have been in writing. Three witnesses, who saw it, speak as to its contents. The only witness who is not a party in the cause is John D. Barkalow. He was an aged witness. He saw the paper once, and read it in the spring of 1834, twenty-two years before his examination. He describes it as having three names signed to it. Joseph M. Stillwell was one, the other two,

he thinks, were Rebecca Stillwell and Michael Stillwell. There were three seals to the instrument, a seal opposite each name. Whether the names of Rebecca and Michael were signed as sureties, he does not know. He thinks the paper specified five hundred and some few dollars, but he is not positive as to the amount. The other witnesses who speak as to the contents of the writing are Phebe Stillwell, the widow of the grantor and a defendant in the cause, and Sarah Lokerson, one of the complainants. Both of these witnesses had full opportunity of being well acquainted with the contents of the paper. According to their evidence, they had both had it in their keeping, had frequently read it, and spoken of its contents. The paper passed from their possession in June, 1835, after which neither of them saw it. The bill in this cause was exhibited in June, 1855. It was an injunction bill, and was sworn to on the 12th of June by the complainants, including Mrs. Lokerson and Ralph Hulse, who had also seen the original contract. The bill was not only sworn to but must have been prepared upon information furnished by Mrs. Lokerson and Mrs. Stillwell, for no other living persons possessed a knowledge of the facts. Hulse, in his testimony, is silent as to the terms of the contract. The bill, as we have seen, states the contract to have been dated on the 22d of October, 1827, and to be an engagement to reconvey upon the repayment of $630 with interest. Mrs. Phebe Stillwell filed her answer, sworn to on the 17th of August, 1855, in which she distinctly alleges the agreement to have been as set out in the bill. It is but justice to these witnesses to believe that they remembered the terms of the contract to be as stated by them under oath in the bill and answer. On her examination as a witness, in November, 1855, Mrs. Stillwell assigns a different date to the contract from that stated in her answer, but is unable to say whether the contract was for the reconveyance of the premises upon the repayment of six hundred and odd dollars, or five

hundred and odd dollars, with interest. She also describes the contract (as did Barkalow) as having three names consecutively, one under the other, with a seal attached to each name.

Sarah Lokerson, the only remaining witness who speaks of the contents of the paper, and the only witness who details its contents with any apparent certainty, was examined in February, 1858. With seeming confidence, she states that the contract was dated on the 12th of August, 1825, and that the reconveyance was to be made by Joseph M. Stillwell upon the payment of $541.30 with interest. She gives no satisfactory account for her change of memory after the time of filing the bill. The remarkable change of memory in both these witnesses is satisfactorily explained by the documentary evidence on the part of the defendants. After the answer of Phebe Stillwell had been filed, the defendants filed their answer denying the alleged agreement to reconvey, as charged in the bill; and in disproof thereof alleging, that in addition to the bond and mortgage for $409.27, held by Joseph M. Stillwell against his brother Abraham at the date of the deed, on the 8th of April, 1824, Abraham became further indebted by a sealed bill, dated on the 12th of August, 1825, for $541.30, which remained in the hands of Joseph M. Stillwell at his death, and which still remains unpaid in the hands of his executors. It is evident that this documentary evidence, which is made an exhibit in the cause, was fatal to the complainants' case as made by the bill. With remarkable facility, the memory of each of the witnesses adapts itself to this new phase of the case. It is assumed that this was not an additional debt to that contained in the mortgage, but that in fact this sealed bill must have been given for the amount found due on the settlement. The date of the settlement is at once changed in the memory of the witnesses from the 22d of October, 1827, to the 12th of August, 1825, and the balance of indebtedness from $630 to $541.30.

Without adverting to other serious objections to the reliability of this evidence, and without imputing any intentional misrepresentation or want of veracity to either of these witnesses, it is enough to say that no decree ought to be made affecting the rights of parties litigant upon evidence upon which so little reliance can safely be placed. The terms of the contract are not proved with sufficient certainty to warrant a decree for a reconveyance.

There are other obstacles of a technical character in the way of the complainants' right to relief to which it is unnecessary to advert. Enough has been said to dispose of the cause.

A great mass of evidence has, however, been taken relating to the question at issue between the parties. It is a family dispute, in which the memory of the dead and the feelings of the living, as well as a question of property, are involved. On these accounts I felt it my duty to examine the evidence in relation to the merits of the cause with more than ordinary care. It may not be improper, for the satisfaction of the parties, to state the result of that examination, as it bears upon the equity of the complainants' claim, aside from all questions of a technical character.

Abraham Stillwell, the ancestor of the complainants, and Joseph M. Stillwell, the ancestor of the defendants, were brothers. In the year 1815 a partition was made of the real estate of their father between his four sons, and the land in question, consisting of about one hundred and nine acres, was assigned to Abraham. On the 30th of August, 1815, he gave to his brother Joseph a bond for $409.27, secured by a mortgage of even date upon fifty acres of the tract. On the 8th of April, 1824, Abraham, for the consideration of $1600, expressed in the deed, conveyed all his land (109 acres) to his brother Joseph in fee. On the 14th of June following Abraham was discharged as an insolvent debtor. On the 12th of August,

1825, he gave to his brother Joseph his sealed bill for $541.30. So far the facts are matters of record, or are vouched for by written documents, and admit of no dispute. From this point the controversy arises. I shall assume the material facts to be substantially as claimed by the complainants. In or about the year 1825, Joseph gave to his brother an agreement to reconvey the land so conveyed to him whenever the debt due should be paid. In December, 1830, Abraham was again discharged as an insolvent debtor. On the 13th of January, 1831, he died intestate, leaving a widow and ten children, the youngest an infant of tender age, the eldest barely twenty-one years of age. They were left in indigent circumstances, having no means of support except the land upon which they lived. The land was encumbered with the debt due to Joseph. The title was in him, subject to the widow's dower. In this state of things the family were permitted to remain in the quiet occupancy of the premises until 1835. The mortgage to Joseph had then been outstanding for twenty years. Ten years had elapsed since he took the legal title, and agreed to permit the mortgagor to redeem. The mortgagor had died, leaving a large and dependent family. The debt had increased, according to the charge of the complainants' bill, from about $400 to $800. The creditor was clearly entitled to have the land or his money. If the heirs of his brother were entitled to redeem he was entitled to foreclose. Foreclosure and redemption are correlative terms.

Had Joseph M. Stillwell commenced proceedings to foreclose the right to redeem, or taken any other step to perfect his title, the rights of the heirs must have been sacrificed. Under these circumstances, he made a deed to the widow, on the 15th of June, 1835, conveying to her in fee simple sixty-six acres, more than half the tract in quantity, though less in value. The balance of the land he conveyed to his brother Jeremiah, who owned the adjoining farm, for $800, the precise amount for which

he held a claim against the estate. Holding the legal title, he sold so much of the land as sufficed to pay his own claim, and conveyed the balance in fee to the widow, thus securing a home to herself and her children, which they have since enjoyed unmolested. If this course was not strictly legal, it surely was not inequitable nor prejudicial to the interests of the heirs of Daniel Stillwell.

At the time of this arrangement the agreement of Joseph M. Stillwell to permit the heirs to redeem was given up by the widow. She now alleges, indeed, that it was given up from fear and the threats of Joseph M. Stillwell. But the whole circumstances repel the idea that it was obtained upon compulsion. The application was made to her in her own house, where she was accompanied by her friends. She went to the house of her daughter, with whom she had left the paper, procured it, and as the evidence shows, voluntarily delivered it to Mr. Stillwell. Three of Abraham's children were then of age, a son and two married daughters. The family were permitted to remain on the premises till the spring of 1836, when they voluntarily removed; one of the sons-in-law taking down and removing a small house which he had erected upon that part of the premises conveyed to Jeremiah Stillwell. The arrangement appears to have been acquiesced in for a period of twenty years, until the filing of the bill in this cause, and until the parties to the transaction and most of the witnesses are dead. The difficulty at this remote period has probably been occasioned by the increased value of the property. There is nothing in the case, as stated by the complainants themselves, that entitles them to relief in a court of equity.

I am nevertheless satisfied that the bill was filed by the heirs of Abraham Stillwell in good faith and with an honest conviction that they had a claim against the estate of their uncle which they were entitled to have enforced. The course adopted by Joseph M. Stillwell may have furnished some ground for this opinion.

The bill will therefore be dismissed without costs.